```
15 MAG    1626
```

Approved: _Jessica_ (signature)
JESSICA R. LONERGAN
Assistant United States Attorney

Before: THE HONORABLE ANDREW J. PECK
United States Magistrate Judge
Southern District of New York

U.S. DISTRICT COURT FILED MAY 1 3 2015 S.D. OF N.Y.

DOC # 1

------------------------------- x
UNITED STATES OF AMERICA          : COMPLAINT

          - v. -                  : Violations of 18 U.S.C.
                                    §§ 1951, 924(c), and 2
OMAR RAWLINS,                     :
                                    COUNTY OF OFFENSE:
                   Defendant.     : NEW YORK
------------------------------- x

SOUTHERN DISTRICT OF NEW YORK, ss.:

     JORGE BETANCUR, being duly sworn, deposes and says that he is a Deputy United States Marshal with the United States Marshals Service (the "USMS"), and charges as follows:

### COUNT ONE

     1. On or about May 12, 2015, in the Southern District of New York and elsewhere, OMAR RAWLINS, the defendant, unlawfully and knowingly did commit robbery, as that term is defined in Title 18, United States Code Section 1951(b)(1), and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, RAWLINS committed an armed robbery of a watch business that operates in interstate commerce on Madison Avenue in Manhattan.

     (Title 18, United States Code, Sections 1951 and 2.)

### COUNT TWO

     2. On or about May 12, 2015, in the Southern District of New York and elsewhere, OMAR RAWLINS, the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the robbery charged in Count One of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crime, did

possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

3. I am a Deputy United States Marshal with the USMS, and I have been personally involved in the investigation of this matter. This affidavit is based in part upon my conversations with other law enforcement agents and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. I have spoken with a detective ("Detective-1") with the New York City Police Department ("NYPD") and learned the following:

    a. On or about May 12, 2015, the NYPD received a report of a commercial robbery that took place at a watch store (the "Watch Store") on Madison Avenue in Manhattan. Detective-1 and other officers reported to the Watch Store, where Detective-1 reviewed surveillance video. Detective-1 and other members of the NYPD spoke with numerous individuals who were present in the Watch Store during the robbery. Their accounts of the events of the robbery were substantially similar. Based on Detective-1's review of the surveillance video, his attendance at those interviews, and his discussions with other NYPD personnel, Detective-1 learned the following:

        i. At approximately 1:15 p.m., three males dressed in dark-colored suits and fedoras (the "Perpetrators") entered the Watch Store.

        ii. One of the Perpetrators, who was wearing a dark-colored bow tie ("Perpetrator-1"), produced a gun and fired a round into the floor of the Watch Store. The bullet fragmented, and a customer of the Watch Store (the "Customer") was hit with a bullet fragment. The Customer received a minor laceration.

iii. The two other Perpetrators ("Perpetrator-2" and "Perpetrator-3") approached one of the watch display cases (the "Display Case"), which was made of glass. Perpetrator-2 and Perpetrator-3 hit the Display Case with hammers, and the Display Case shattered. Perpetrator-2 and Perpetrator-3 began removing watches from the Display Case and putting them into bags. Perpetrator-2 and Perpetrator-3 were wearing gloves that appeared, on the surveillance video, to be light in color.

iv. An employee of the Watch Store (the "Employee"), who had been working in a back room (the "Back Room"), stuck his head out through a door behind the Display Case. Perpetrator-1 fired a shot in the direction of the Employee. The Employee was not hit, but he retreated into the Back Room.

v. Perpetrator-2 and Perpetrator-3 continued to grab watches from the Display Case and put them into bags.

vi. After approximately one minute, all three Perpetrators exited the Watch Store and ran eastbound on 53rd Street.

vii. A security guard for the Watch Store (the "Security Guard") began chasing the Perpetrators on foot. As the Security Guard ran after the Perpetrators, he called 911 and provided a description of the Perpetrators and the direction in which they were running.

5. Detective-1 spoke with two NYPD officers ("Officer-1" and "Officer-2") and learned the following:

a. On or about May 15, 2015, at approximately 1:15 p.m., Officer-1 and Officer-2 were driving in an unmarked police car in the vicinity of the Watch Store when they received information over their radio about the Perpetrators. When Officer-1 and Officer-2 were driving on Park Avenue, they saw three individuals in suits, who appeared to match the description of the Perpetrators. Officer-1 and Officer-2 got out of their car and pursued the three individuals on foot.

b. Officer-1 and Officer-2 observed one of the individuals look back at Officer-1 and Officer-2. Then, the three individuals started running north on Park Avenue.

3

c.  Officer-1 and Officer-2 chased after the three individuals and caught up to one of them, OMAR RAWLINS, the defendant. Officer-1 and Officer-2 placed RAWLINS under arrest.

d.  At the time of RAWLINS's arrest, he was carrying a black and red bag (the "Bag"). Officer-1 opened the Bag to check for a gun and observed, among other things, the following:

  i.  Five watches, which appeared to be made out of gold, each wrapped around a display pillow;

  ii.  One orange and black hammer;

  iii.  Two pairs of white and red work gloves;

  iv.  One yellow hard hat; and

  v.  One yellow safety vest.

e.  At the time of RAWLINS's arrest, he was wearing the following:

  i.  A black fedora;

  ii.  A light blue suit jacket;

  iii.  A red tie;

  iv.  Black dress pants; and

  v.  Athletic pants underneath his dress pants.

f.  While Officer-1 and Officer-2 were placing RAWLINS under arrest, the Security Guard arrived at the scene. The Security Guard stated, in substance and in part, that RAWLINS appeared to be one of the individuals who had just robbed the Watch Store.

6.  Detective-1 reviewed surveillance video footage from East 53rd Street between Madison and Park Avenues from the time immediately following the robbery of the Watch Store on May 12, 2015. Based on Detective-1's review of the footage, he learned the following:

4

a. Two individuals are walking quickly eastbound on East 53rd Street.

   b. One individual, who is wearing a dark-colored bowtie, and whose appearance is consistent with the appearance of Perpetrator-1, is wearing a red jacket. He appears to be carrying another jacket in his hand.

   c. The second individual hands a fedora back to the first individual.

   d. The second individual begins removing a dark-colored jacket. He appears to be wearing a light blue jacket underneath.

7. On May 15, 2015, at approximately 5:55 p.m., Detective-1 went to East 53rd Street between Madison and Park Avenues and observed a dark-colored jacket on the sidewalk.

8. When Detective-1 reported to the Watch Store following the robbery, he observed two fired shell casings, multiple bullet fragments, a bullet mark on the floor, and a fired bullet in the Back Room.

9. Based on Detective-1's review of the surveillance footage from the Watch Store from the time of the robbery, Detective-1 believes that:

   a. The location of the bullet mark on the floor is consistent with Perpetrator-1's location when he first fired the gun.

   b. The location where the fired bullet was recovered in the Back Room is consistent with the direction in which Perpetrator-1 fired the second shot.

10. Detective-1 reviewed a list of stolen watches provided to the NYPD by personnel at the Watch Store. The list highlights twenty missing watches, all Rolex brand, worth approximately $730,000.

11. Based on Detective-1's conversation with a manager of the Watch Store, Detective-1 learned that the Watch Store obtains watches from providers outside of New York.

12. Detective-1 reviewed the five Rolex watches obtained from OMAR RAWLINS, the defendant, following his arrest. At least one bears an inscription stating "Swiss Made."

13. I spoke with Detective-1, who told me that following the arrest of OMAR RAWLINS, the defendant, RAWLINS asked for an attorney, and he was not questioned by law enforcement officers.

14. On or about May 13, 2015, I brought OMAR RAWLINS, the defendant, to the USMS cellblock for processing. During processing, RAWLINS asked me whether he could call his grandmother (the "Grandmother"). RAWLINS gave me the telephone number for the Grandmother, and I dialed the number. A woman answered the phone, and I put the phone on speaker. RAWLINS spoke with the Grandmother. During the conversation, the following, in sum and substance, occurred:

    a. The Grandmother asked RAWLINS what was happening; RAWLINS did not respond.

    b. The Grandmother asked RAWLINS where he was; RAWLINS responded that he did not know.

    c. I picked up the phone and explained to the Grandmother that RAWLINS was in federal custody. The Grandmother asked what RAWLINS had done; I responded that I could not tell her.

    d. I put the phone back on speaker. RAWLINS's mother (the "Mother") got on the phone. The Mother asked why she was on speaker phone. I told the Mother that it was because RAWLINS was in federal custody.

    e. The Mother asked RAWLINS what he did. RAWLINS responded that he robbed a jewelry store. He also told the Mother that no one was hurt during the robbery.

WHEREFORE, deponent respectfully requests that OMAR RAWLINS, the defendant, be imprisoned, or bailed, as the case may be.

_____
JORGE BETANCUR
Deputy United States Marshal
United States Marshals Service

Sworn to before me this
13th day of May, 2015

_____
THE HONORABLE ANDREW J. PECK
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK